930 So.2d 524 (2001)
Ricky D. ADKINS
v.
STATE.
CR-99-0834.
Court of Criminal Appeals of Alabama.
February 9, 2001.
Opinion on Return to Remand August 31, 2001.
Opinion on Return to Second Remand April 26, 2002.
Opinion on Return to Third Remand March 26, 2004.
Rehearing Denied May 28, 2004.
Certiorari Denied November 18, 2005.
*529 Stephen B. Bright, Christopher M. Johnson, and Ty Alper, Atlanta, Georgia, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., and Thomas F. Parker IV (withdrawn January 24, 2001) and A. Vernon Barnett IV, asst. attys. gen., for appellee.
Alabama Supreme Court 1031350.
PER CURIAM.
Ricky D. Adkins appeals from the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P.
Adkins raises many issues in this appeal. However, we must remand this case to the circuit court for St. Clair County for that court to make specific findings of fact concerning the allegations that are not procedurally barred in Adkins's postconviction petition. Therefore, we will not address all the issues Adkins raises.
The trial court, when denying Adkins's petition, stated:
"Though neither attorney for Petitioner was overly experienced, both performed competently, and their representation of Petitioner cannot be adjudged ineffective, professionally unreasonable or deficient. Additionally, Petitioner has not shown to this Court that, but for the conduct of counsel, a different result as to judgment, sentence or appeal would have occurred.
"All remaining claims made by Petitioner are due to be denied pursuant to Rule 32.2(a)(2)-(5) of the Alabama Rules of Criminal Procedure in that each issue was raised at trial or on appeal, or could have been raised at trial or on appeal."
(C.R. 72.)[1]
This is a complicated case. Adkins was sentenced to death and his conviction and sentence were upheld on appeal. Adkins v. State, 639 So.2d 515 (Ala.Crim.App. 1993), aff'd, 639 So.2d 522 (Ala.), cert. denied, *530 513 U.S. 851, 115 S.Ct. 151, 130 L.Ed.2d 90 (1994). The record of the Rule 32 hearing before the trial court is only two volumes; however, there is also a 14-volume supplemental record consisting of affidavits, depositions, and exhibits submitted to the trial court for its consideration on the issues presented in the petition. Our review of the allegations Adkins raises in his brief on appeal is immeasurably hampered because the trial court failed to make written findings of fact concerning each material issue of fact presented. It would be premature for this Court to review the issues without the trial court's making such findings of fact. See Ex parte Grau, 791 So.2d 345 (Ala.2000).
Therefore, this case is remanded to the circuit court for St. Clair County for that court to comply with Rule 32.9(d), Ala. R.Crim.P., by making "specific findings of fact relating to each material issue of fact presented." See Grau; Brown v. State, 677 So.2d 1266 (Ala.Crim.App.1996); Smith v. State, 665 So.2d 954 (Ala.Crim. App.1994); Hellums v. State, 630 So.2d 477 (Ala.Crim.App.), after remand, 630 So.2d 480 (Ala.Crim.App.), cert. denied, 630 So.2d 481 (Ala.1993); Powell v. State, 616 So.2d 370 (Ala.Crim.App.1992), after remand, 616 So.2d 371 (Ala.Crim.App. 1993); Arnold v. State, 562 So.2d 296 (Ala. Crim.App.1990), after remand, 590 So.2d 387 (Ala.Crim.App.1991). It is not necessary for the trial court to address those issues it had determined were procedurally barred. Because of the complexity of this case, the trial court is given 60 days from the date of this opinion to file its findings of fact and conclusions of law with this Court.
REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
COBB, J., recuses herself.

On Return to Remand
PER CURIAM.
Ricky D. Adkins appeals from the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. We remanded this case so that the trial court could comply with Rule 32.9(d), Ala. R.Crim.P., by making "specific findings of fact relating to each material issue of fact presented." See Adkins v. State, 930 So.2d 524 (Ala.Crim.App.2001).
The trial court has filed its return to our remand order; that return states, in part:
"The Court concludes that the following are the only material issues of fact presented for this Court's consideration: Ineffective assistance of counsel in the investigation of Petitioner's case, the defense of the State's case, the presentation of an adequate defense and the presentation of mitigation during the sentencing phase. The Court specifically finds that though neither attorney for Petitioner was overly experienced, both performed competently, and their representation of Petitioner cannot be adjudged legally or factually ineffective, professionally unreasonable or deficient. Additionally, Petitioner has not shown to this Court [that], but for the conduct of counsel, a different result as to judgment, sentence or appeal would have occurred."
The trial court has failed to comply with our directions; it has not made specific findings of fact concerning each material allegation of ineffective assistance of counsel raised in Adkins's postconviction petition. The return to remand merely contains general conclusions; it does not refer to any factual determinations.
*531 The record reflects that Adkins's third amended postconviction petition was filed on May 24, 1999. It raised numerous claims of ineffective assistance of trial counsel that comprise nearly 13 pages of the petition. The majority of Adkins's claims concern his allegation that his trial counsel failed to investigate and failed to present mitigation evidence at the penalty phase of trial. In support of the allegations Adkins offered the depositions of Adkins's family members, the affidavits of expert witnesses, and the depositions of the two attorneys who represented Adkins at his capital trial. There are also numerous exhibits from the Taylor Hardin Secure Medical Facility, where Adkins underwent mental evaluations before his trial. It is impossible for this Court to review these claims without the trial court's first making specific findings of fact as to each material allegation of ineffective assistance of counsel raised in Adkins's amended petition.
For the trial court's convenience, we quote the following findings of fact made by a circuit judge and cited with approval in our opinion in Horsley v. State, 527 So.2d 1355 (Ala.Crim.App.1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989):
"`Petitioner's trial counsel's performance was not deficient for failing to object to the trial court's oral charge. Trial counsel are not obliged to object without regard to the merits of the objection. E.g., Palmes v. Wainwright, 725 F.2d 1511, 1523 (11th Cir.)[,] cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Petitioner also failed to establish a reasonable probability that, but for the trial court's charge, the outcome of his trial would have been different. A passing reference, at the worst, to review of errors of law when directly coupled with an explanation in the strongest terms of the jury's responsibility to decide whether a defendant is guilty or innocent cannot be construed to and did not diminish the jury's sense of its responsibility.
"`Petitioner's third allegation of ineffective assistance, contained in paragraphs 15(a), 15(b), 15(d), and 16(a), was that trial counsel failed to submit his mental deficiency, resulting from a childhood fall, as mitigation. At the evidentiary hearing trial counsel testified that they only learned of petitioner's fall on the day of sentencing when they were told of it by petitioner's mother and grandmother. Trial counsel only learned of the fall at this late date despite their repeated efforts to obtain information of this type from both petitioner and his family. Trial counsel testified, and the trial transcript shows, that they presented this testimony, which was all the evidence they had to present, at sentencing.
"`Trial counsel conducted a reasonable pre-trial investigation which included seeking evidence from petitioner's background favorable to him. Trial counsel had extensive pretrial contact with petitioner and petitioner did not appear to them to suffer from any mental deficiency or disability. Trial counsels' performance was not deficient for failing to present evidence of petitioner's purported mental deficiency. The absence of any additional evidence can be attributed not to trial counsel but to petitioner and his family. Trial counsel's representation was not deficient simply because petitioner's coram nobis counsel developed some arguably mitigating evidence not presented at trial where trial counsel made a reasonable effort to discover such evidence. Burger v. Kemp, 753 F.2d 930, 938-939 (11th Cir.1985).

*532 "`Petitioner has also failed to establish a reasonable probability that, but for the absence of some additional evidence showing a childhood injury, the outcome of his trial would have been different. The jury was made aware of both the injury and its supposed effects through the testimony of petitioner's mother and grandmother. Any additional evidence would have been cumulative to this testimony and would not have affected petitioner's trial.
"`Petitioner's fourth allegation of ineffective assistance, contained in paragraph 15(c) of the petition, was that trial counsel failed to seek psychiatric assistance. Trial counsel's investigation and contact with petitioner did not lead them to think that he had mental problems warranting a psychiatric examination. Both counsel were, and are, experienced criminal defense attorneys who had represented clients with mental problems. Their strategic decision not to pursue a psychiatric examination was made after an extensive investigation and is not to be second-guessed. Strickland v. Washington, supra, 466 U.S. at 690, 104 S.Ct. 2052. Petitioner has again failed to show that trial counsel's performance was deficient. Further, petitioner's evidence of a childhood fall does not establish that he was entitled to a psychiatric examination or psychiatric assistance or that, but for the absence of a request for a psychiatric examination, the outcome of his trial would have been different.
"`Petitioner's fifth allegation of ineffective assistance, contained in paragraph 16(b) of the petition, was that trial counsel failed to present evidence establishing, as a mitigating circumstance, `Petitioner's potential for adjustment to prison life.' [Trial counsel] testified that trial counsel did not consider asserting that this mitigating factor was present. He also noted that petitioner committed the charged offense while on escape from prison in North Carolina. Petitioner's allegation is frivolous and trial counsel were not ineffective for failing to assert a mitigating circumstance which is contradicted by the facts."
527 So.2d at 1361-62. See also Duncan v. State, 722 So.2d 795 (Ala.Crim.App.1998); Kolmetz v. State, 649 So.2d 1343 (Ala. Crim.App.1994); and Lynch v. State, 620 So.2d 749 (Ala.Crim.App.1993).
This case is remanded to the Circuit Court for St. Clair County for that court to make specific findings of fact concerning the claims of ineffective assistance of trial counsel. Due return should be filed in this Court no later than 60 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
COBB, J., recuses herself.

On Return to Second Remand
PER CURIAM.
The appellant, Ricky D. Adkins, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim.P. On two separate occasions we remanded this case to the Circuit Court of St. Clair County for that court to make specific written findings of fact on the issues that were not procedurally barred-specifically, Adkins's claims of ineffective assistance of counsel. See Adkins v. State, 930 So.2d 524 (Ala.Crim.App.2001), opinion on return to remand, 930 So.2d at 530. We noted that this is a complicated death-penalty case that raises numerous claims of ineffective assistance of counsel.
*533 The trial court has failed to comply with our directions. The return filed with this Court reflects that the trial court made broad conclusions with little references to any specific facts. Nor did the trial court address all of the claims raised.
This case is again remanded to the Circuit Court of St. Clair County for that court to make specific written findings of fact concerning each allegation of ineffective assistance of counsel contained in Claim L of Adkins's amended petition in numbered paragraphs 158 through 170. For the court's assistance we cite to the proposed order submitted by the State, which is part of the certified record filed with this case. By citing the trial court to the State's proposed order we do not wish to be understood as suggesting that the court adopt in toto the written findings of fact and conclusions of law submitted by the State in its proposed order. See Grayson v. State, 675 So.2d 516 (Ala.Crim. App.1995). We cite the proposed order merely as an aid to the trial court to assist that court in identifying the specific issues that warrant written findings of fact. If the trial court determines that any of the claims are not sufficiently pleaded, the court should specifically reference each claim in its findings. Due return should be filed in this Court no later than 60 days from the date of this opinion.

REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
COBB, J., recuses herself.

On Return to Third Remand
PER CURIAM.
Ricky Dale Adkins, an inmate on death-row at Holman Penitentiary, appeals the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim.P. Adkins was convicted of three counts of capital murder for murdering Billie Dean Hamilton during the course of a rape, a robbery, and a kidnapping. He was sentenced to death. This Court affirmed Adkins's conviction and sentence. Adkins v. State, 600 So.2d 1054 (Ala.Crim. App.1990). While Adkins's case was pending before the Alabama Supreme Court, the United States Supreme Court released its decision in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which extended its earlier holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to white defendants. Because Adkins is white, the Alabama Supreme Court remanded the case for a Batson hearing. Ex parte Adkins, 600 So.2d 1067 (Ala.1992). On return to remand, Adkins's conviction and death sentence were again affirmed. Adkins v. State, 639 So.2d 515 (Ala.Crim.App.1993), aff'd, 639 So.2d 522 (Ala.1994).
In June 1995, Adkins filed a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P.[1] The petition was amended in December 1995 and again in May 1999. The majority of the evidence presented in support of the Rule 32 petition was documentary evidence and depositions. See Rule 32.9, Ala.R.Crim.P. After a brief evidentiary hearing, the trial court denied the petition. This appeal followed.
*534 In February 2001, this Court remanded this case for the circuit court to make specific findings of facts concerning the ineffective-assistance-of-counsel claims raised in Adkins's amended petitions. Adkins v. State, 930 So.2d 524 (Ala.Crim.App. 2001). We remanded this case twice after the circuit court failed to comply with our directions. Adkins v. State, 930 So.2d at 530 (Ala.Crim.App.2001) (opinion on return to remand), and Adkins v. State, 930 So.2d at 532 (Ala.Crim.App.2001) (opinion on return to second remand). This case is now before this Court on return to this Court's third remand.

Standard of Review
This Court does not apply a plain-error standard of review when evaluating a circuit court's denial of a petition for postconviction relief attacking a capital-murder conviction and death sentence. Ex parte Dobyne, 805 So.2d 763 (Ala.2001), and Rule 45A, Ala.R.App.P. Moreover, the procedural bars contained in Rule 32 apply equally to all cases, even those in which the death penalty has been imposed. Hooks v. State, 822 So.2d 476 (Ala.Crim. App.2000). According to Rule 32.3, Ala. R.Crim.P., Adkins has the "burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."
We apply an abuse-of-discretion standard in evaluating the findings made by the circuit court in a Rule 32 proceeding. "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition. See Roberts v. State, 516 So.2d 936 (Ala.Crim.App.1987)." Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App. 1999). However, "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala.2001).
The majority of the claims Adkins raises on appeal relate to claims that his attorneys failed to provide him with the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution.[2] When reviewing an ineffective-assistance-of-counsel claim, we apply the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficient performance.
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant *535 must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
466 U.S. at 689, 104 S.Ct. 2052 (citations omitted). As the United States Supreme Court further stated:
"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."
466 U.S. at 690-91, 104 S.Ct. 2052. "An accused is entitled `"not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance."'" Bui v. State, 717 So.2d 6, 27 (Ala.Crim.App.1997), quoting Thompson v. State, 615 So.2d 129, 134 (Ala.Crim.App.1992), quoting in turn Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir.1977).
As the United States Court of Appeals for the Eleventh Circuit stated in Chandler v. United States, 218 F.3d 1305 (11th Cir.2000), cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001):
"The purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) (`We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that `[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or `what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
". . . .
"Because the reasonableness of counsel's acts (including what investigations are reasonable) depends `critically' upon `information supplied by the [petitioner]' or `the [petitioner]'s own statements or actions,' evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S.Ct. at 2066. `[A]n inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.' Id. (`[W]hen a defendant has given counsel reason to believe that pursuing certain investigations *536 would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.')."
Chandler, 218 F.3d at 1313-19 (footnote omitted). "We have recognized that, given these principles and presumptions, `the cases in which habeas [similar to Rule 32] petitioners can properly prevail . . . are few and far between.'" Chandler, 218 F.3d at 1313, quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir.1995).
When claims of ineffective assistance of counsel involve the penalty phase of a capital murder trial the focus is on "`whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'" Jones v. State, 753 So.2d 1174, 1197 (Ala.Crim.App.1999), quoting Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992). See also Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000). An attorney's performance is not per se ineffective for failing to present mitigating evidence at the penalty phase of a capital trial. See State v. Rizzo, 266 Conn. 171, 833 A.2d 363 (2003); Howard v. State, 853 So.2d 781 (Miss.2003), cert. denied, 540 U.S. 1197, 124 S.Ct. 1455, 158 L.Ed.2d 113 (2004); Battenfield v. State, 953 P.2d 1123 (Okla.Crim.App.1998); Conner v. Anderson, 259 F.Supp.2d 741 (S.D.Ind. 2003); Smith v. Cockrell, 311 F.3d 661 (5th Cir.2002); Duckett v. Mullin, 306 F.3d 982 (10th Cir.2002), cert. denied, 538 U.S. 1004, 123 S.Ct. 1911, 155 L.Ed.2d 834 (2003); Hayes v. Woodford, 301 F.3d 1054 (9th Cir.2002); and Hunt v. Lee, 291 F.3d 284 (4th Cir.), cert. denied, 537 U.S. 1045, 123 S.Ct. 619, 154 L.Ed.2d 517 (2002).

I.
Adkins first argues that he was denied the effective assistance of counsel at the penalty phase of his capital trial because, he says, his attorneys failed to investigate and present mitigating evidence and failed to make an effective closing argument.
Adkins was presented at trial by Talmadge Fambrough and Michael Barrett.[3] Both attorneys, and Georgia attorney Charlotta Norby, represented Adkins on direct appeal.
A review of the background of this case is essential to an understanding of this issue. Adkins testified in his own behalf at trial. He said that Billie Dean Hamilton, a real estate agent, was showing him some houses in the Birmingham area on the day of her murder. He said that he and Hamilton had several consensual sexual encounters on that day. Adkins testified that although he killed Hamilton he did not rape, rob, or kidnap her. He said that after the last sexual encounter Hamilton called him a bastard and slapped him on the face and he hit her in the back of the head with a wrench. He said that the next thing he remembered was Hamilton lying on the ground in a pool of blood. Adkins said that after he left the scene he noticed Hamilton's purse in his vehicle and he went through its contents and removed her credit cards and money. The coroner testified that Hamilton died as a result of six deep lacerations to the scalp and a stab wound to the upper abdomen.
Adkins was apprehended shortly after the murder in Augusta, Georgia, where he had checked into a Holiday Inn motel using one of Hamilton's stolen credit cards. A plethora of evidence established Adkins's *537 guilt, including his in-court testimony and his earlier confession.
Defense counsel's strategy at the guilt phase was to concentrate on casting a reasonable doubt on the capital-murder charges by showing that Adkins did not intend to rape, rob, or kidnap Hamilton. Adkins's testimony was consistent with the fact that when Hamilton's body was discovered several diamond rings were still on her hands and the fact that Hamilton had communicated with friends and family all day during the day she was with Adkins. Also, the medical testimony showed that there was no trauma to the victim's vaginal area.
Defense counsel thoroughly cross-examined all of the witnesses and put on an admirable defense, given the strong evidence against Adkins. The transcript reflects that after Adkins was found guilty of three counts of capital murder he became despondent and refused to testify in the penalty phase or to offer any help to his attorneys. Adkins had specifically instructed his attorneys before trial not to contact his family members. He also ordered his attorneys not to put on any evidence in mitigation at the penalty phase. The following occurred:
"Mr. Barrett [defense counsel]: Your Honor, the defendant has informed me as his counsel he does not wish to take the stand in this phase, nor wish to put on any evidence. He asked that I stand and make a statement to the jury on his behalf in the form of a plea for him, or request for him, about what the jury should do.
"The Court: Let the record reflect all of this is out of the hearing of the jury at bar.
"Mr. Barrett: As I stated, Your Honor, I have recommended against this to him. And he states to me that he wishes to bring it to the Court's attention, and tell the Court personally what he wants to do. I am giving him an opportunity if he would like to change his mind.
"The Court: Is that your decision?
"The Defendant: Yes, sir.
"Mr. Barrett: Over my advice, Your Honor."
(Record on direct appeal at pp. 1263-64.)[4]
Counsel also advised the court that certain matters should be placed on the record for a reviewing court to consider. The following then occurred:
"Mr. Fambrough [defense counsel]: For the record, in the sentencing stage of this case, we have been in touch with the defendant's family. His girlfriend, I have talked to D.T., the defendant's girlfriend every afternoon this week. Prior to the time of the trial, 10 days prior to the trial, I called her, D.T., to talk to her and asked her to come. She said she could not because she had additional expenses with her daughter in college, and she couldn't afford the trip. I called his sister. It is my understanding he has a sister, or half sister and half brother. I called the sister, Mrs. Turner. She advised me she was a nurse, and she could not get off from work. And I asked her if her brother would come, Ricky's brother. And she said that the brother had nothing to do with Ricky, that he would not come, and probably would not even talk to Ricky. I asked her if she would please talk to him and stress the importance of some of his family members being here for the *538 sentencing here, especially, of course, the witnesses to the case-in-chief, but for the purpose of the sentence hearing. I implored him to come and expressed again the importance to Ricky, and what it meant to him for someone to be here....
"Mr. Barrett [defense counsel]: I want to state for the record that I have been in constant contact with Mr. Talmadge Fambrough during the course of preparation of this case, and especially, in the 10-day period he mentioned. In fact, many of the calls he made were made in my presence and the information related to the girlfriend and the half sister in my presence. We have made a diligent effort to locate people from his home state of Texas to come to these proceedings for the purpose of the sentence hearing. There has been none that expressed a willingness to come, I do not know anything more that Mr. Fambrough could have done as a reasonable and prudent attorney from the defendant in this aspect of the case, or any aspect. And certify this to the Court of Appeals as an officer of the court."
(Record on direct appeal at pp. 1256-59.) During his deposition Fambrough testified that Adkins was adamant about not presenting any mitigating evidence.
The question here is whether a defendant's waiver of the presentation of mitigation evidence at the penalty phase of a capital-murder trial bars that defendant from arguing that his counsel's performance was deficient for failing to present mitigating evidence. Though Alabama has not specifically addressed this issue, we have looked to other states for guidance. In Zagorski v. State, 983 S.W.2d 654 (Tenn.1998), the Tennessee Supreme Court addressed a similar issue. The Zagorski court stated:
"The petitioner contends that his trial attorneys were ineffective in failing to investigate and present mitigating evidence despite his instructions to the contrary. Generally, a defense attorney's failure to investigate and prepare for a possible capital sentencing hearing is below the range of competence demanded of criminal attorneys. See California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); Goad [v. State], 938 S.W.2d [363] at 369 [(Tenn.1996)]. . . .
"In this case, petitioner's counsel recognized the importance of exploring and presenting mitigating evidence. They yielded, however, to the petitioner's demands that no evidence be offered in mitigation upon his conviction of first degree murder. The petitioner understood that he faced the death penalty, but he nevertheless instructed his attorneys to refrain from any investigation into his family background and to essentially forego any defense at the sentencing phase.
". . . .
"When a competent defendant knowingly and voluntarily chooses a lawful course of action or defense strategy, counsel is essentially bound by that decision. If the defendant is prejudiced in some respect by his own decision, he should not later be heard to complain about those consequences by challenging the conduct of his counsel. See State v. Dunn, 224 Tenn. 255, 453 S.W.2d 777, 779 (Tenn.1970); Dukes v. State, 578 S.W.2d 659, 665 (Tenn.Crim.App.1978)."
983 S.W.2d at 657-59 (footnote omitted).
In State v. Arguelles, 63 P.3d 731 (Utah 2003), the Utah Supreme Court stated:
"Some courts have held that in capital cases the Eighth Amendment requires admission of all available mitigating evidence to ensure the reliability of the death verdict, regardless of whether the *539 defendant approves of having such evidence presented. See State v. Koedatich, 112 N.J. 225, 548 A.2d 939, 992-97 (1988); see also Morrison v. State, 258 Ga. 683, 373 S.E.2d 506, 509 (1988) (stating that where defendant refuses to offer mitigating evidence, the trial court `may' have an obligation to conduct an independent investigation into evidence of mitigation). The vast majority of courts considering this issue, however, have reached the opposite conclusion, determining that a defendant's Sixth Amendment right to represent himself and control the course of the proceedings carries with it the right to choose how muchif anymitigating evidence is offered. See, e.g., United States v. Davis, 285 F.3d 378, 381-85 (5th Cir. 2002) (overturning district court's decision to appoint independent counsel to present mitigating evidence defendant refused to present); Singleton v. Lockhart, 962 F.2d 1315, 1322 (8th Cir.1992) (finding no ineffective assistance of counsel where counsel complied with client's demand to present no mitigating evidence); Silagy v. Peters, 905 F.2d 986, 1008 (7th Cir.1990) (stating a capital defendant may forego the presentation of mitigating evidence); Nelson v. State, 681 So.2d 252, 255-56 (Ala.Crim.App. 1995) (stating capital defendant may waive the presentation of mitigating evidence); People v. Bloom, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698, 718-19 (1989) (upholding death verdict where self-represented defendant chose to present no mitigating evidence); Hamblen v. State, 527 So.2d 800, 804 (Fla. 1988) (upholding death verdict where self-represented defendant did not oppose death verdict and chose to present no mitigating evidence); State v. Coleman, 168 Ill.2d 509, 214 Ill.Dec. 212, 660 N.E.2d 919, 933 (1995) (upholding death verdict where self-represented defendant chose to present no mitigating evidence); State v. Ashworth, 85 Ohio St.3d 56, 706 N.E.2d 1231, 1236-39 (1999) (upholding death verdict where defendant chose to present no mitigating evidence); Wallace v. State, 893 P.2d 504, 511-12 (Okla.Crim.App.1995) (upholding death verdict where defendant openly sought death penalty and chose to present no mitigating evidence); Zagorski v. State, 983 S.W.2d 654, 657-59 (Tenn.1998) (finding no ineffective assistance of counsel where counsel complied with client's demand to present no mitigating evidence). We agree with the reasoning of these courts."
63 P.3d at 752-53. See also People v. Orange, 168 Ill.2d 138, 169, 659 N.E.2d 935, 949, 213 Ill.Dec. 589, 603 (1995) ("Where a capital defendant waives presentation of mitigating evidence, counsel's compliance with his client's wishes does not support a claim of ineffective assistance of counsel."); Frye v. Lee, 235 F.3d 897, 906-07 (4th Cir.2000)("Were we to hold that [counsel] and [cocounsel] rendered ineffective assistance, despite their repeated attempts to have [the defendant] change his mind on presenting mitigation evidence, we would be forcing defense lawyers in future cases to choose between Scylla and Charybdis.[5]"); Battenfield v. State, 953 P.2d 1123, 1127 (Okla.Crim.App. 1998) ("We will not hold counsel responsible for a client's obstinate behavior.").
We join the majority of jurisdictions that have considered this issue and hold that a defendant is estopped from raising a claim of ineffective assistance of *540 counsel for counsel's failure to present mitigating evidence when the defendant waived the presentation of mitigating evidence.
To punish Adkins's attorneys for following his wishes would conflict with the doctrine of invited error. "Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby." Phillips v. State, 527 So.2d 154, 156 (Ala.1988).
Ultimately the decision to waive the presentation of mitigating evidence was Adkins's decision.[6] We refuse to find an attorney's performance ineffective for following his client's wishes.
"To require defense counsel to present mitigating evidence over the defendant's objection would be inconsistent with an attorney's paramount duty of loyalty to the client and would undermine the trust, essential for effective representation, existing between attorney and client. Moreover, imposing such a duty could cause some defendants who otherwise would not have done so to exercise their Sixth Amendment right of self-representation."
People v. Lang, 49 Cal.3d 991, 1031, 782 P.2d 627, 653, 264 Cal.Rptr. 386, 412 (1989).
The record also shows that counsel did investigate possible mitigating evidence. Adkins's parents were deceased, but defense counsel contacted other family members. Adkins's half-brother said, "To hell with him. He got what he deserved." Adkins's sister could not miss work and was unable to attend the trial. Adkins's girlfriend could not attend because of the expense. Fambrough testified that Adkins's family members were angry with him. Also, Barrett testified that he and Fambrough intended to present the testimony of a psychologist and Adkins's probation officer at the penalty phase. There is absolutely no evidence indicating that counsel's performance was outside the wide range of acceptable conduct. See Strickland.
Adkins also argues that his counsel's closing argument in the penalty phase was deficient and that he was prejudiced by it.
A review of the record shows that Barrett informed the court on two occasions that Adkins had "tied his hands." His closing argument was a plea for Adkins's life. He also told the jury about Adkins's young daughter. While Barrett's argument was not a textbook example of an outstanding closing argument, under the unique facts of this case it would be difficult for Adkins to prove that he was prejudiced by it. Also, Barrett filed a motion to withdraw as Adkins's counsel after Adkins was convicted and sentenced to death. Adkins filed a pro se objection to that motion. His objection stated that he was satisfied with Barrett's performance and that he wished him to remain on his case. Given the unique circumstances of this case, we cannot say that counsel's actions fell outside the wide range of professional conduct. See Strickland. Moreover, we are confident that even if counsel's argument was deficient Adkins suffered no prejudice. Adkins failed to satisfy the Strickland test.

II.
Adkins also argues that his counsel's performance during the guilt phase was deficient.
*541 The circuit court made the following findings of fact concerning the defendant's background:
"Adkins makes several claims that trial counsel failed to investigate various avenues of mitigation. Among those claims are the failure to investigate and present evidence concerning (1) Adkins's youth and family background; (2) Adkins's mental psychological, emotional, and medical history; and (3) Adkins's family and friends who would have asked the jury to spare his life.
"a. Youth and Family Background
"Ricky Dale Adkins was represented at trial by Talmadge Fambrough and Michael Barrett. Michael Barrett was retained through the assistance of Adkins's attorney in Texas, while Talmadge Fambrough was appointed to assist because Barrett did not have the statutorily mandated five years of experience practicing law to represent a defendant in a capital case.
"In preparation for the trial, counsel contacted Forrest Roberts, Adkins's brother, about coming to Alabama for the trial. Mr. Roberts was not interested in attending or helping his brother. Adkins's sister was also contacted, but could not miss work for the trip to Alabama. Adkins's girlfriend, Deborah Johnson, said that attendance was too expensive. Counsel was aware that Adkins's parents were deceased. Adkins was adamant about counsel not contacting family members on his behalf.
"Counsel testified by deposition that many telephone calls were made in an attempt to investigate Adkins's social history. That Rule 32 counsel were able to contact other individuals who claim a willingness to testify at trial is not dispositive of the issue of trial counsel's effectiveness. Counsel were aware of an avenue of mitigation, and pursued it. They were unsuccessful in securing the testimony of out of state witnesses for the reasons listed above. The Court notes that, even in Rule 32 proceedings, Rule 32 counsel traveled to Texas and to Louisiana to secure the testimony of the witnesses. While the witnesses proclaim that they would have testified at trial, the Court finds the credibility of these statements questionable.
"The Court finds that counsel performed effectively under Strickland in attempting to seek out witnesses and evidence to present at trial. Even so, the Court further addresses the issue of prejudice and finds none. Through the testimony of various witnesses, Adkins presents as a child who came from a loving family. Although the family structure underwent losses and tragedies, the Court finds that there is no reasonable probability that the result of the trial would have been different had this information been presented to the jury.
"The Court denies relief on the merits of this claim.
"b. Mental, Psychological, Physical and Emotional History
"Michael Barrett testified that counsel received records from Crossroads Samaritan Counseling Center in Texas. Counsel also considered the Taylor Hardin [Secure Medical Facility] records. Talmadge Fambrough had extensive legal experience in St. Clair County. As such, having never seen a mental health defense succeed in that area, he and Mr. Barrett made a joint strategic decision that mental health evidence would not benefit the defense, and that alternatively, such evidence could be adverse to their position. Clearly, counsel were aware of, considered, and rejected a mental/emotional/psychological defense or theory of mitigation. This was not a *542 situation of counsel's complete failure to investigate, but rather an exercise of trial strategy supported by careful consideration. The Court finds no error here.
"The Court further finds no prejudice. Dr. Barry Scanlon testified on Adkins's behalf by deposition in post-conviction proceedings. Scanlon found that Adkins was not a psychopath or schizophrenic, nor did he suffer from a personality disorder. In fact, Scanlon did not `think that [Adkins] meets any of the DSM[[7]] criteria for any of the standard recognized disorders.' Scanlon found that Adkins knew right from wrong. Further, nothing in Adkins's history indicated that he suffered dissociative episodes prior to the time he murdered Ms. Hamilton. The mental health evidence presented is insufficient to lead to the conclusion that the result of trial probably would have been different had the jury heard this information.
"For failure to meet either prong of Strickland v. Washington, this Court denies relief on the merits of this claim.
"With regard to the alleged failure to investigate Adkins's medical history, the Court finds no deficient performance on the part of counsel. Counsel has presented evidence during post-conviction proceedings that Adkins suffered from high fevers as a child, and was involved in a motorcycle accident in young adulthood. Adkins has not shown any causal connection between these incidents and Adkins's commission of the crime in question. Moreover, the Court finds no prejudice. It cannot be said that the results of the trial probably would have been different if the jury had heard this information. The Court denies relief on the merits of this claim.
"With regard to the alleged failure to investigate Adkins's medical history, the Court finds no deficient performance on the part of counsel. Counsel has presented evidence during post-conviction proceedings that Adkins suffered from high fevers as a child, and was involved in a motorcycle in young adulthood. Adkins has not shown any causal connection between these incidents and Adkins's commission of the crime in question. Moreover, the Court finds no prejudice. It cannot be said that the results of the trial probably would have been different if the jury had heard this information. The Court denies relief on the merits of this claim.
"c. Testimony of Family and Friends
"This claim essentially involves a discussion of the same facts as sub-part (a), supra. Again, counsel contacted Forrest Roberts, Adkins's brother, about coming to Alabama for the trial. His sister was also contacted, but could not miss work for the trip to Alabama. Adkins's girlfriend, Deborah Johnson, said that attendance was too expensive. His parents were deceased. Just because trial counsel was unable to obtain the testimony of family and friends does not mean that they neglected this avenue of mitigation. The record and testimony indicates that they attempted to secure such testimony, but were unsuccessful in their efforts. The Court finds that counsel performed competently. Moreover, the Court finds no prejudice. This claim is rejected on the merits."
"[C]onviction of a client does not prove the lack of skill or zeal on the part of counsel." Taylor v. State, 291 Ala. 756, 760, 287 So.2d 901, 906 (1973).

*543 A.
Adkins specifically argues on appeal that his counsel failed to present mental-health evidence to establish a defense that he suffered from a mental disease or defect.
Fambrough and Barrett testified during depositions that the decision not to present mental-health evidence was a matter of trial strategy. Fambrough, who has practiced law in St. Clair County since 1954, said that in his years in the district attorney's office and in private practice he had never seen a mental-health defense succeed in St. Clair County. Adkins was also evaluated at Taylor Hardin Secure Medical Facility. Those results gave counsel no grounds to argue a mental-health defense at trial.
At the Rule 32 proceedings, Adkins deposed Dr. Barry Scanlon, a psychiatrist who evaluated Adkins for the Rule 32 hearing. Dr. Scanlon testified that Jenkins was not "psycho photic," schizophrenic, and did not meet the DSM definition for any mental disorder. He said that it was his opinion that Adkins suffered from dissociative episodes.
The State deposed Dr. Joe W. Dixon, a forensic psychologist. Dr. Dixon testified that Adkins was not suffering from any kind of psychotic disorder nor was he delusional. It was his opinion that Adkins engaged in imaginary games. Dr. Dixon also testified that Adkins could have formed the intent to kill Hamilton.
"`Strategic choices made after thorough investigation of relevant law and facts are virtually unchallengeable.' Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). We will refrain from the use of hindsight in evaluating trial counsel's decisions. See Hallford [v. State], 629 So.2d [6] at 9 [(Ala.Crim.App.1992)]; and State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App. 1993). See also Cade v. State, 629 So.2d 38, 42 (Ala.Cr.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994) (holding that `an attorney may reasonably decide to avoid presenting evidence [or a defense] that he believes will do more harm than good')."
Jones v. State, 753 So.2d at 1185. Given that defense counsel testified that it was a strategic choice not to present this evidence and the inconsistent testimony about Adkins's mental health, we cannot say that Adkins has satisfied either prong of the Strickland test.

B.
Adkins argues that counsel failed to present evidence indicating that he had used false identities. Adkins argues that this evidence was relevant because, he says, it would support his account of the murder and show that Adkins did not have the intent to kill Hamilton.[8]
Adkins testified concerning the facts surrounding the murder and said that he did not rape, rob, or kidnap Hamilton. Without a doubt, evidence indicating that Adkins had a history of fabricating identities would have weakened and discredited Adkins's own testimonytestimony that was crucial to his defense. There is absolutely no showing that the failure to introduce this information prejudiced Adkins. See Strickland.

C.
Adkins argues that counsel failed to make numerous objections to the introduction of various evidence. However, he does not identify those instances in his brief to this Court.
"`"[E]ffectiveness of counsel does not lend itself to measurement by picking *544 through the transcript and counting the places where objections might be made."' Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App.1986). `Even though there were several instances where counsel could have objected, "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel." Ex parte Lawley, 512 So.2d 1370, 1373 (Ala.1987).' O'Neil v. State, 605 So.2d 1247, 1250 (Ala.Cr.App.1992). As this Court observed in Graham v. State, 593 So.2d 162, 166 (Ala.Cr.App.1991):
"`The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards.'"
Daniels v. State, 650 So.2d 544, 555 (Ala. Crim.App.1994). Adkins failed to meet his burden of proof in regard to this claim. See Rule 32.3, Ala.R.Crim.P.

D.
Adkins alleges that counsel failed to present evidence in the guilt phase of his life and background. This allegation is not supported by the record. Adkins's own testimony revealed a great deal of evidence about his upbringing and family history. We are at a loss as to what other type of evidence about Adkins's family history would have been relevant at the guilt phase of his capital trial. Adkins failed to meet his burden of proof in regard to this claim. See Rule 32.3, Ala.R.Crim.P.

E.
Adkins argues that counsel failed to provide effective assistance during pretrial litigation. Specifically, he argues that counsel failed to effectively argue certain pretrial motions.
The circuit court made the following detailed findings in regard to this issue.
"With respect to pretrial publicity and the change of venue motion, Adkins questioned Michael Barrett about these topics in his deposition. Counsel painted a picture of an angry mob storming the courtroom on a continual basis. The fact of whether the community was interested in the case is irrelevant to a determination of ineffective assistance of counsel for failure to adequately litigate pretrial publicity and the motion for a change of venue. In fact, Adkins introduced the motion for a change of venue, but did not ask counsel any questions about his preparation of it. Clearly trial counsel moved for a change of venue, and it was denied. Adkins cannot prove deficient performance under Strickland v. Washington, [466 U.S. 668 (1984)]. He has not demonstrated that the motion was insufficient or incompetently drafted; he has only shown that trial counsel was unsuccessful in having the venue changed. Moreover, Adkins cannot show that, but for the denial of his motion for a change of venue, the outcome of the case would have been different. Under the facts of this case, it cannot be said that a jury in a different venue would have probably found Adkins not guilty, or would have recommended a sentence of life imprisonment without parole. This claim is denied on the merits.
"With respect to Barrett's medical condition, the record of trial contains an affidavit from his doctor and a transcript of a hearing on the motion to continue. Barrett's medical condition was presented adequately by trial counsel. In the exercise of judicial discretion, the trial court proceeded forward with the trial, *545 with Adkins being represented additionally by experienced counsel Talmadge Fambrough. Trial counsel did not perform ineffectively in arguing and presenting evidence to support the motion for a continuance. This claim is denied on the merits.
"The trial record reflects that trial counsel moved to recuse Judge Austin on the grounds of perceived bias. Counsel were aware of this avenue and took steps to secure Judge Austin's recusal. The Court finds that trial counsel did everything that reasonable counsel should have done, and therefore performed effectively under Strickland. Moreover, Talmadge Fambrough's opinion of Judge Austin's rulings during the trial was that Judge Austin ruled favorably for the defense. Additionally, Judge Austin did not conduct the sentencing hearing or pass sentence upon Adkins until after the election in question. Based on these facts, the Court finds that the prejudice prong of Strickland has not been met. This claim is denied on the merits.
"Adkins's claim that trial counsel failed to adequately move for investigative assistance is likewise denied on the merits. Adkins showed, through Barrett, that he had an investigator named Steve Saxon, and that trial counsel discontinued using Saxon as an investigator at some time prior to the Adkins trial. Trial counsel did not subsequently move for funds with which to hire an investigator. Adkins did not show exactly when the services of an investigator were no longer available, or that there was remaining investigative work to be performed. Barrett was not questioned about why he did not move for funds for an investigator. A defendant is not automatically entitled to an investigator, but rather, must make an adequate showing. Adkins has presented insufficient evidence to prove either prong of Strickland, much less both; his claim is therefore denied.
"The final claim under this issue is the failure to adequately litigate suppression of Adkins's statements. Given the opportunity to do so, Adkins did not ask trial counsel any questions about their preparation of the motion to suppress his statements. Adkins has failed to show deficient performance or prejudice arising therefrom. The Court has independently reviewed the Motion to Suppress and the hearing thereon, and does not find that counsel performed ineffectively in preparing it. Even if error had been committed, and the Court finds that none has been, Adkins has not shown that the results of the trial would probably have been different if his statement had not been admitted. This claim is denied on the merits."
We agree with the circuit court's findings. It is clear from a review of the record that Adkins failed to meet his burden of proof. See Rule 32.3, Ala.R.Crim.P.

III.
Adkins argues that he was denied his right to present certain evidence at the Rule 32 proceedings.

A.
Adkins first argues that he was denied the right to depose Judge Austin and Judge Holladay. The record shows that Judge Holladay was initially assigned to preside over Adkins's trial. However, Judge Holladay withdrew from the case, and the case was assigned to Judge Austin, who was then a district court judge. During Adkins's trial Judge Austin was running for a circuit judgeship in St. Clair County.
*546 Deposing witnesses is part of the discovery process. See Rule 16.6, Ala.R.Crim.P. However, there is no absolute right to discovery in a postconviction proceeding. The Alabama Supreme Court has stated:
"We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. . . .
"We emphasize that this holding that postconviction discovery motions are to be judged by a good-cause standarddoes not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord [State v.] Lewis, supra, 656 So.2d [1248] at 1250 [(Fla.1994)], wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987)."
Ex parte Land, 775 So.2d 847, 852 (Ala. 2000).
Adkins argues that he needed to depose Judge Holladay so that he could reveal why Judge Holladay withdrew from presiding over Adkins's case on the eve of the trial date. He argues that he needed to depose Judge Austin to present evidence indicating that Judge Austin was engaged in a hotly contested judicial race, which, he argues, affected his rulings.
"The overwhelming authority concludes that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Fayerweather v. Ritch, 195 U.S. 276, 306-07, 25 S.Ct. 58, 49 L.Ed. 193 (1904); Grant v. Shalala, 989 F.2d 1332, 1344-45 (3d Cir.1993); see also Robinson v. Commissioner of Internal Revenue, 70 F.3d 34, 38 (5th Cir.1995); United States v. Edwards, 39 F.Supp.2d 692 (M.D.La.1999). `[J]udges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed.' United States v. Cross, 516 F.Supp. 700, 707 (M.D.Ga.1981), aff'd, 742 F.2d 1279 (11th Cir.1984)."
United States v. Roebuck, 271 F.Supp.2d 712, 718 (D.VI.2003). "This protection allows judges to vigorously perform their duties without fear of later having to provide explanatory or observational testimony." *547 Hensley v. Alcon Labs., Inc., 197 F.Supp.2d 548, 550 (S.D.W.Va.2002).
Moreover, the substantive issues that Adkins claims were relevant to the judges' testimony related to issues that had been addressed on direct appeal and were barred because they had been presented on direct appeal. See Rule 32.2(a)(4) and (a)(5), Ala.R.Crim.P. The Rule 32 court did not abuse its discretion in not allowing Adkins to depose Judge Holladay and Judge Austin.[9]
Furthermore, some of the evidence Adkins claims was available only through Judge Austin's testimony was evidence that was presented to the circuit court and contained in the record on direct appeal. This Court addressed this issue in-depth in our opinion on direct appeal. See Adkins, 600 So.2d at 1060-63. Adkins failed to meet his burden of showing "good cause" for the requested discovery. The circuit court did not commit any error.[10]

B.
Adkins argues that the circuit court erred in not allowing him to introduce disciplinary reports from the Alabama State Bar concerning his attorneys Barrett and Fambrough. It appears that the attorneys had been disciplined by the Alabama State Bar. The disciplinary reports, filed after Adkins's trial, all related to civil actions where Barrett or Fambrough either allowed the statute of limitations to expire or were unprepared for a case. Adkins was tried in 1988.
The record reflects that when Adkins attempted to introduce the disciplinary reports the State objected and argued that the reports were not relevant to the issue in this case because Adkins had to comply with the Strickland test when establishing his ineffective assistance of counsel claims.
Although Alabama has never considered the effect of a state bar disciplinary action on a claim of ineffective assistance of counsel, other states have considered this issue. The Illinois Court of Appeals in People v. Allen, 220 Ill.App.3d 772, 580 N.E.2d 1291, 162 Ill.Dec. 872 (1991), gave a detailed account of the state of the law on this issue. The Court stated:
"It has been held that the Sixth Amendment right to counsel is not satisfied where the defendant was represented by a person who was never licensed to practice law. In these circumstances, the defendant's deprivation of a duly licensed attorney is considered per se reversible error. . . .
"However, courts have applied the rule of Strickland when the defendant was represented at trial by an attorney who has been disbarred or was practicing under a suspended license. (See *548 Waterhouse v. Rodriguez (2d Cir.1988), 848 F.2d 375 (defense counsel disbarred during trial for conduct unrelated to defendant's trial); United States v. Mouzin (9th Cir.1986), 785 F.2d 682 (same); Commonwealth v. Thibeault (1990), 28 Mass.App. 787, 556 N.E.2d 403 (defense attorney's license suspended during trial for conduct unrelated to defendant's case); State v. Smith (Minn.App.1991), 464 N.W.2d 730 (same); see also United States v. Williams (7th Cir.1991), 934 F.2d 847 (defense counsel's license suspended, for neglect of unrelated case, after defendant's trial ended); People v. Elvart (1989), 189 Ill.App.3d 524, 136 Ill.Dec. 807, 545 N.E.2d 331 (defense attorney's license suspended for nonpayment of state license fees); Beto v. Barfield (5th Cir.1968), 391 F.2d 275 (same); Reese v. Peters (7th Cir.1991), 926 F.2d 668 (same); People v. Lieberman (1986), 149 Ill.App.3d 1052, 103 Ill.Dec. 480, 501 N.E.2d 797 (attorney's censure by Attorney Registration and Disciplinary Commission did not result in ineffective assistance of counsel); cf., Commonwealth v. Vance (1988), 376 Pa.Super. 493, 546 A.2d 632 (no per se reversible error where defense counsel disbarred, for false statement in application for admission to bar, after trial ended); but see People v. Brigham (1991), 208 Ill.App.3d 982, 153 Ill.Dec. 777, 567 N.E.2d 735, appeal allowed, 139 Ill.2d 599, 159 Ill.Dec. 110, 575 N.E.2d 917 (per se reversible error where defense counsel's name stricken from master roll of attorneys, for failure to pay license fee, before defendant's trial began).) Similarly, it has been held that the defense attorney's pending disciplinary proceedings during his representation of the defendant does not automatically dictate the conclusion that defendant is entitled to a new trial for ineffective assistance of counsel; rather, the defendant's claim of ineffective assistance of counsel is to be considered in light of the standard set forth in Strickland. See People v. Long (1990), 208 Ill.App.3d 627, 153 Ill.Dec. 556, 567 N.E.2d 514; People v. Perry (1989), 183 Ill.App.3d 534, 132 Ill.Dec. 639, 540 N.E.2d 379; People v. Bernardo (1988), 171 Ill.App.3d 652, 121 Ill.Dec. 550, 525 N.E.2d 857; People v. Stachelek (1986), 145 Ill.App.3d 391, 99 Ill.Dec. 249, 495 N.E.2d 984; see also People v. Williams (1983), 93 Ill.2d 309, 67 Ill.Dec. 97, 444 N.E.2d 136 (defendant awarded a new trial under `unique circumstances' that defense counsel faced disbarment proceedings while representing defendant at trial for capital offense); People v. Rainge (1983), 112 Ill.App.3d 396, 68 Ill.Dec. 87, 445 N.E.2d 535 (same); cf., People v. Williams (1985), 138 Ill.App.3d 1041, 93 Ill.Dec. 569, 487 N.E.2d 13 (no per se ineffective assistance of counsel where defense attorney facing criminal indictment while representing defendant).
"It has been noted that `the infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance.' (Mouzin, 785 F.2d at 697.) Thus,
"`neither suspension or disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be  an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur *549 sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence. All we need hold here is that [whether] a lawyer's services were ineffective [should be considered] on a case [by case], not a per se, basis.' Mouzin, 785 F.2d at 698."
220 Ill.App.3d at 781-83, 580 N.E.2d at 1298-99, 162 Ill.Dec. at 879-80. See also State v. McCroy, 259 Neb. 709, 613 N.W.2d 1 (2000) (considering a claim that an attorney performance was deficient because at the time he represented the defendant he had been disbarred in Colorado, court found no per se ineffective assistance but held that the claim would be evaluated under the Strickland test).
The fact that Barrett and Fambrough have been disciplined by the Alabama State Bar on unrelated matters has no bearing on their performance in Adkins's trial. Adkins was still obliged to satisfy the Strickland test. See People v. Allen, supra.
Moreover, one of the reasons for excluding the disciplinary reports was based on the State's argument that Adkins should have asked the attorneys about the disciplinary reports during their depositions but he failed to do so. We find no reversible error in the circuit court's exclusion of the disciplinary reports.

IV.
Adkins also argues that he was denied his right to appeal because this Court gave deference to Judge Austin's findings and because this Court and the Alabama Supreme Court failed to address all of his contentions in his appellate briefs.
Aside from the fact that there was no evidence to support this issue it is waived because it could have been raised on direct appeal in Adkins's application for rehearing before this Court and the Alabama Supreme Court. See Rule 32.2(a)(5), Ala. R.Crim.P.

V.
Adkins also makes several different arguments that are procedurally barred in this Rule 32 proceeding. The following issues are procedurally barred:
A. Whether Adkins was denied a fair and impartial trial judge;
B. Whether the trial court erred in denying the motion for a continuance;
C. Whether the trial court erred in denying the motion for a change of venue;
D. Whether Adkins was denied an adequate voir dire;
E. Whether Adkins's due-process rights were violated on return to remand;
F. Whether the jury instructions on reasonable doubt were unconstitutional;
G. Whether his sentence was disproportionate;
H. Whether Alabama's method of execution is unconstitutional;
I. Whether prosecutorial misconduct denied him a fair trial;
J. Whether the trial court failed to excuse certain jurors for cause;
K. Whether the trial court erred in admitting certain photographs.
Issues C, D, E, G, H, I, and J are barred because they could have been raised on direct appeal but were not. See Rule 32.2(a)(5), Ala.R.Crim.P. Issues A, B, F, and K are also barred because they were raised and addressed on direct appeal either before this Court or the Alabama Supreme Court. See Rule 32.2(a)(4), Ala. R.Crim.P.

*550 VI.
Adkins argues that "principles of fundamental fairness preclude application of the procedural bars here because they have not been uniformly applied by other Alabama court." (Adkins's brief at p. 123.) He also argues that the rules must be interpreted to "incorporate cause and prejudice and miscarriage of justice exceptions." (Adkins's brief at p. 123.) Adkins appears to be arguing that this Court should apply a plain-error standard of review when reviewing an appeal from the denial of a Rule 32 petition where the death penalty was imposed.
As the Alabama Supreme Court stated in Ex parte Dobyne, 805 So.2d 763, 766-67 (Ala.2001):
"The correct reading of Rule 39(a)(2), Ala.R.App.P., permits plain-error review only with respect to the certiorari petition that arises from the direct appeal of the death-penalty sentence to the Court of Criminal Appeals. Although this Court has not previously stated this construction of the plain-error rule, the Court of Criminal Appeals has consistently applied it:
"`In every appeal from the denial of postconviction relief under Rule 32 in a death-penalty case, this court has held that the plain-error rule does not apply in Rule 32 proceedings and that the procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed. Thompson v. State, 615 So.2d 129 (Ala.Cr.App.1992); Cade v. State, 629 So.2d 38, 41 (Ala. Cr.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994); Neelley v. State, 642 So.2d 494, 496 (Ala.Cr.App.1993), cert. quashed, 642 So.2d 510 (Ala.1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995); State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. 1993); Davis v. State, 720 So.2d 1006, 1013 (Ala.Cr.App.1998); Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App. 1995); Horsley v. State, 675 So.2d 908 (Ala.Cr.App.1996); Grayson v. State, 675 So.2d 516 (Ala.Cr.App.1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309, 136 L.Ed.2d 225 (1996); Payne v. State, 791 So.2d 383 (Ala.Cr.App. 1999); Boyd v. State, 746 So.2d 364 (Ala.Cr.App.1999); Lawhorn v. State, 756 So.2d 971 (Ala.Cr.App.1999); Jones v. State, 753 So.2d 1174 (Ala.Cr. App.1999).'
"Siebert v. State, 778 So.2d 842, 847 (Ala.Crim.App.1999)."
For the foregoing reasons, we affirm the circuit court's denial of Adkins's petition for postconviction relief.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur; COBB, J., recuses herself.
NOTES
[1] Before the trial court ruled on the petition, Adkins filed a motion requesting that the trial court make its own "genuine and independent findings of fact and conclusions of law." (R. 56.) Cf. Whitehead v. State, 593 So.2d 126 (Ala.Crim.App.1991).
[1] Adkins also filed a motion to have the trial judge, Judge Austin, remove himself from presiding over Adkins's Rule 32 proceedings. Judge Austin denied that motion. Adkins then filed a petition for a writ of mandamus in the Alabama Supreme Court, seeking Judge Austin's recusal. Based on comments in the Supreme Court's opinion, Judge Austin transferred the proceedings to Judge Rochester. See Ex parte Adkins, 687 So.2d 155 (Ala. 1996).
[2] Adkins has abandoned many claims on this appeal. Those claims that Adkins presented in his petition but does not pursue on appeal are deemed abandoned. See Brownlee v. State, 666 So.2d 91 (Ala.Crim.App.1995).
[3] Barrett testified that he was retained to represent Adkins and that Fambrough was later appointed.
[4] This Court may take judicial notice of our prior records in an appeal. See Ex parte Salter, 520 So.2d 213, 216 (Ala.Crim.App. 1987). There is no evidence indicating that Adkins was unable to waive the presentation of mitigating evidence or that he was coerced into doing so.
[5] In Homer's Odyssey, Odysseus must sail his ship through straits protected by two monstersScylla and Charybdis. His course will necessarily bring him closer to one or the other, and he must choose between the monsters.
[6] Chief Justice Burger, in his concurring opinion in Wainwright v. Sykes, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), said: "Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make."
[7] DSM is an acronym for Diagnostic and Statistical Manual of Mental Disorders, a publication of the American Psychiatric Association.
[8] The State did present testimony that Adkins had told people that he was a police officer.
[9] Adkins also makes a one-paragraph argument in his brief to this Court to the effect that the circuit court erred in not allowing him to present the election results. There is very little discussion about this matter contained in the record. Without more information, it is impossible to find that the circuit court erred. Also, we fail to see how this evidence was relevant because the election occurred before Judge Austin sentenced Adkins to death.
[10] Adkins also challenged the circuit court's failure to allow him to depose the district attorney. He argued that the district attorney's testimony was necessary to show that when the case was remanded for a Batson hearing the circuit court asked for additional information from the State. However, this information was contained in the return-to-remand record was submitted to this Court and could have been argued on return to remand. Therefore, this issue is barred because it could have been raised on direct appeal. See Rule 32.3(5), Ala.R.Crim.P. Also, this information was available to Adkins from various other sources. Adkins failed to show "good cause" for deposing the district attorney.